1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9

CHARLES E. JACKSON,

CV F 98 5723 AWI LJO P

10

            Plaintiff,

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART
(Doc. 141-2)

11
12

  v.

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT AND DISMISSING
CASE (Doc. 141-1  )

13

TOM CAREY,

14

            Defendants.

ORDER DIRECTING CLERK OF COURT TO
ENTER JUDGMENT

15

_____/

16

## I. PROCEDURAL HISTORY

17

      Charles E. Jackson ("Plaintiff") is a state prisoner proceeding pro se and in forma

18

pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

19

      Plaintiff filed the instant action on June 29, 1998.  On June 21, 1999, the Complaint was

20

dismissed, with leave to amend, for failure to state any claims upon which relief may be granted.

21

Plaintiff filed an Amended Complaint on July 30, 1999.   On January 25, 2000, the Amended

22

Complaint was dismissed, with leave to amend, for failure to state a claim upon which relief may

23

be granted.  Plaintiff filed a Second Amended Complaint on July 5, 2000.  On December 19,

24

2000, the Court found the Second Amended Complaint stated cognizable claims as to

25

Defendants Carey, Papac, Marshall, Davis and Padilla and ordered service of the Complaint on

26

the Defendants.

27

      On April 26, 2001, Defendants moved for dismissal on the basis of Plaintiff's failure to

28

state a claim for relief.  The Court issued Findings and Recommendations to grant the Motion

1

1    and dismiss the action on July 26, 2001.  The District Court adopted these Findings on

2    September 24, 2001, and judgment was entered the next day.  Plaintiff filed a Notice of Appeal.

3         On January 23, 2004, the Ninth Circuit reversed in part and affirmed in part the District

4    Court's decision and remanded the case to the Court for further proceedings.

5         On April 2, 2004, Plaintiff filed a Third Amended Complaint as instructed by the Ninth

6    Circuit in its Order of remand.  On June 2, 2004, Plaintiff filed a Fourth Amended Complaint

7    (inappropriately captioned as a Second Amended Complaint).

8         On June 24, 2004, Plaintiff filed a Fifth Amended Complaint on which this case is

9    proceeding naming Warden Tom L. Carey, Correctional Lieutenant Papac, Administrative

10   Segregation Counselor J. Marshall, Supervising Counselor A. Davis, Appeals Coordinator E.

11   Padilla as Defendants.  The Fifth Amended Complaint alleges that Plaintiff's Due Process rights

12   were violated when he was denied the right to present a defense (¶ 32, 39-40, Fifth Am. Compl.),

13   was placed in the SHU subsequent to his disciplinary findings being reissued and reheard and

14   that his retention in the SHU is atypical confinement (¶ 34-37, Fifth Am. Compl.), that his

15   placement in the SHU was not rectified by Defendants (¶ 33, Fifth Am. Compl.), and that he

16   suffered emotional distress as a result of such placement   (¶ 33, 38, Fifth Am. Compl.).

17   Plaintiff further alleges that the failure to respond to the second inmate appeal denied him his

18   First Amendment right to redress grievances.  Defendants filed an Answer to the Fifth Amended

19   Complaint on August 17, 2004.

20        Defendants submitted a timely Motion for Summary Judgment and Motion to Dismiss

21   the action on February 21, 2006.  Plaintiff filed his Opposition to the Motion on May 30, 2006.

22   Defendants submitted a Reply to the Opposition July 5, 2006.

23   **II.  BACKGROUND**

24        On December 16, 1997, and while confined at California Correctional Institution in

25   Tehachapi ("CCI"), Plaintiff allegedly lunged towards a doctor during a medical examination for

26   which he was subsequently issued a Rules Violation Report ("CDC 115") charging him with

27   battery on a non-prisoner.   Plaintiff was placed in administrative segregation ("AdSeg") pending

28   review of the charges.

1    On December 23, 1997, Plaintiff appeared before an Institutional Classification

2 Committee ("ICC") for initial review of his AdSeg Placement.  Based on the seriousness of his

3 offense, Plaintiff was retained in AdSeg pending completion of the disciplinary process.

4    On January 19, 1998, Plaintiff appeared before the Senior Hearing Officer ("SHO"),

5 Defendant R. Papac, for a hearing on the disciplinary charge.  Plaintiff stated that he was willing

6 to proceed with the hearing but needed the reporting employee, Dr. Liebman, and Medical

7 Technical Assistants Rogers and Bell present.   The hearing was postponed and continued on the

8 next day where Dr. Liebman and MTA Rogers both appeared and testified.  Plaintiff's remaining

9 four witnesses were not allowed.  Plaintiff was found guilty of the charge of battery on a non-

10 prisoner.

11    On February 15, 1998, Plaintiff submitted an inmate appeal challenging the disciplinary

12 conviction.  During the pendency of this appeal, the Institutional Classification Committee

13 ("ICC") reviewed Plaintiff's case and recommended a 12 month Secured Housing Unit ("SHU")

14 term with a Minimum Eligible Release Date ("MERD") of September 16, 1998.  The ICC

15 referred the case to the Classification Services Representative ("CSR") for approval of the SHU

16 term and on March 24, 1998, the CSR endorsed and approved the 12 month SHU term.

17    On April 1, 1998, Plaintiff's inmate appeal challenging the disciplinary conviction was

18 granted in part by the reviewing staff.  Plaintiff's disciplinary conviction was ordered reissued

19 and reheard because the SHO did not document the reasons for denying Plaintiff's witnesses as

20 required by Departmental procedures.

21    Plaintiff was transferred to Corcoran to serve the 12 month SHU term on April 8, 1998.

22 On April 15, 1998, Plaintiff appeared before the Facility IV-A SHU ICC at Corcoran State Prison

23 for an initial SHU review where his case factors were reviewed.  Plaintiff stated that he

24 understood the committee's action and his appeal rights were explained to him.

25    On August 26, 1998, while Plaintiff was still at the Corcoran SHU, Associate Warden T.

26 Vaughn ordered Plaintiff's disciplinary conviction be reissued and reheard.   On or about

27 September 8, 1998, the CDC 115 was reissued and Plaintiff was transferred from Corcoran SHU

28 to CCI for rehearing of the CDC 115 for battery on a non-prisoner.  On September 17, 1998,

Plaintiff's case was reviewed by the ICC in absentia as Plaintiff refused to appear.  The ICC

noted that the CDC 115 for battery on a non-prisoner was ordered reissued and reheard and that

the Chief Disciplinary Officer reevaluated the CDC 115 and the charges were dismissed "in the

interests of justice."  As a result, the ICC acted to nullify the 12 month SHU term assessed by the

ICC on February 26, 1998, along with any D2D credits based on the disciplinary finding.

Plaintiff's lost credits were restored.

## III.  MOTION TO DISMISS

### A.  Exhaustion

Defendants moved to dismiss the action based on Plaintiff's failure to exhaust his

administrative remedies.

Pursuant to the Prison Litigation Reform Act ("PLRA") of 1995, "[n]o action shall be

brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Section 1997e(a)

exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 435

U.S. 516, 532 (2002).  Prisoners must complete the prison's administrative process, regardless of

the relief sought by the prisoner and regardless of the relief offered by the process, as long as the

administrative process can provide some sort of relief on the complaint stated.  Booth v. Churner,

532 U.S. 731, 741 (2001).  "All 'available' remedies must now be exhausted; those remedies need

not meet federal standards, nor must they be 'plain, speedy, and effective.' '  Porter, 534 U.S. at

524 (citing Booth, 532 U.S. at 739 n. 5).  Exhaustion must occur prior to filing suit.  McKinney

v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir.2002).  Thus, plaintiff may not exhaust while the

suit is pending.  McKinney, 311 F.3d at 1199-1201.

The California Department of Corrections has an administrative grievance system for

prisoner complaints.  Cal. Code Regs., tit. 15 § 3084, et seq.  "Any inmate or parolee under the

department's jurisdiction may appeal any departmental decision, action, condition, or policy

which they can reasonably demonstrate as having an adverse effect upon their welfare."  Id. at

3084.1(a).  Four levels of appeal are involved, including the informal level, first formal level,

1  second formal level, and third formal level, also known as the "Director's Level."  Cal. Code

2  Regs. tit 15, § 3084.5 (2004).

3     Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative

4  defense under which defendants have the burden of raising and proving the absence of

5  exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).   In order to meet this

6  burden, Defendants must demonstrate that pertinent relief "remained available." Brown v.

7  Valoff, 422 F.3d 926, 936-37 (9th Cir.2005).  The Ninth Circuit has also found exhaustion when

8  a prisoner has demonstrated that his grievance has been rejected as untimely and he could "go no

9  further in the prison's administrative system; no remedies remained available to him." Ngo v.

10  Woodford, 403 F.3d 620, 625 (9th Cir.2005).

11     The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is

12  subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  Wyatt,

13  315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365,

14  368 (9th Cir. 1998) (per curiam)).  In deciding a motion to dismiss for failure to exhaust

15  administrative remedies, the court may look beyond the pleadings and decide disputed issues of

16  fact.  Wyatt, 315 F.3d at 1119-20.  If the court concludes that the prisoner has failed to exhaust

17  administrative remedies, the proper remedy is dismissal without prejudice.  Id.   The Ninth

18  Circuit has rejected a total exhaustion rule and thus, a court is not required to dismiss an entire

19  action when a Section 1983 complaint contains both exhausted and unexhausted claims.  Lira v.

20  Herrera, 427 F.3d 1164, 2005 WL 2850115 (9th Cir. 2005.)

21     Defendants contend that Plaintiff failure to exhaust his administrative remedies with

22  respect to his allegations prior to filing the instant action on June 29, 1998.   In support of their

23  Motion Defendants provide evidence that Plaintiff submitted an inmate appeal on February 15,

24  1998.  (Padilla Decl., Exh. A; Padilla Decl., ¶ 18-20.)  In this appeal, assigned Log No. 98-0413,

25  Plaintiff recites the events that occurred up to the disciplinary proceeding on January 20, 1998,

26  and, in particular the events concerning the failure to allow Plaintiff to call four of his six

27  witnesses.  Plaintiff complains that he was not allowed to postpone the hearing and that

28  Defendant Lt. Papac was disrespectful to him and smelled of alcohol.  Plaintiff then requests a

new 115 hearing and that the "Log 4A-9712-047" be dropped. Id. The record reflects that Plaintiff's appeal was bypassed at the informal level and the first level of appeal.

On March 24, 1998, Plaintiff's appeal at the Second Level was partially granted by Lt. Canady and the disciplinary hearing was ordered "reissued and reheard" because the SHO did not document the reasons why witnesses were refused. Id. Plaintiff was informed that he could appeal to the Director's Level should he desire to do so. Id. Plaintiff, however, did not pursue this appeal further.

Defendants also provide evidence that Plaintiff attempted to file a second appeal on April 1, 1998. (Padilla Decl., Exh. B.) This appeal is addressed to the Warden and requests that the Warden stop Plaintiff's transfer to the SHU which could happen "any day." Plaintiff indicates that he was found guilty of a disciplinary finding and that his appeal concerning this finding was granted. Plaintiff then asks when he would be receiving a new hearing. Id. According to the evidence provided by Defendants, Plaintiff's appeal was "screened out" on April 28, 1998, and returned to him without assignment of a log number because plaintiff failed to attach the 602 he was referencing in the appeal. Id. There is no record that Plaintiff ever returned the appeal with the supporting documentation. Id.

The Court finds that Defendants have met their burden as the parties moving for dismissal. The burden therefore shifts to Plaintiff to set forth evidence demonstrating that he satisfied the exhaustion requirement.

In opposition, Plaintiff argues that the PLRA exhaustion requirement is inapplicable to him because his allegations do not concern "prison life" within the meaning of the PLRA. (Plaintiff's Memorandum at 27-28.) The Court finds Plaintiff's argument unavailing.

In Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Id. at 517, 122 S.Ct. at 985. Further, Section 3626(g)(2), which is also part of

1   the PLRA[1], provides that the term "civil action with respect to prison conditions" means any civil

2   proceeding arising under Federal law with respect to the conditions of confinement or the *effects*

3   *of actions by government officials on the lives of persons confined in prison,* but does not include

4   habeas corpus proceedings challenging the fact or duration of confinement in prison."  18 U.S.C.

5   § 3626(g)(2) (emphasis added.)

6       Plaintiff's chief assertion in this case concerns his wrongful transfer to the SHU and the

7   conditions in the SHU.  Plaintiff alleges specifically that confinement in the SHU caused him to

8   suffer hypertension, he contracted Hepatitis B, that his family visits were impaired because he

9   was confined at a different institution and that his "term in the SHU caused a major disruption in

10  his living conditions."  (Fifth Am. Compl. at ¶ 35.)   Clearly, Plaintiff's allegations concern the

11  conditions of his confinement thereby requiring exhaustion of his administrative remedies.

12      Plaintiff argues that he exhausted his administrative remedies in his first appeal and that

13  were he to file a second appeal he would be charged with appeal abuse for excessive filings.

14  Plaintiff also contends that he should not have had to file a second appeal in order to have his

15  first granted remedy honored and that his transfer to the SHU was based on the guilty finding

16  which he successfully grieved in his first appeal.  Thus, no further remedies were available for

17  him to exhaust.

18      The Court finds it undisputed that Plaintiff filed a first inmate appeal,  Log No. 98-0413,

19  and that this appeal was granted in part in that the finding was ordered reissued and reheard.

20  This appeal, however, only grieved Plaintiff's allegations concerning the denial of four of his six

21  witnesses. (Padilla Decl., Exh. A.)  All the remaining claims raised in this action arose after

22  Plaintiff filed this initial appeal which was granted on March 24, 1998.  Thus, contrary to

23  Plaintiff's assertion, the first inmate appeal could not possibly have grieved Plaintiff's remaining

24  Due Process claims concerning the SHU placement, emotional distress or the First Amendment.

25  Satisfaction of the exhaustion requirement requires that inmates, in their grievances, place prison

26

27          [1]Title 18 U.S.C. § 3626 prevents federal courts from ordering broad prospective relief in "any civil action
28  with respect to prison conditions."18 U.S.C. § 3626. Like § 1997e, § 3626 curbs the extent to which federal prison
    litigation interferes with the states' and the federal government's administration of their own prisons.

1   personnel on fair notice as to the events that subsequently give rise to suit.  As the first inmate

2   appeal grieved solely the procedural due process issue concerning the right to call witnesses, it

3   cannot be said to have grieved any of the remaining claims raised in this action.

4        Plaintiff cites to Ngo v. Woodford, 603 F.3d 620 (9th Cir. 2005) for the proposition that a

5   Plaintiff may still seek a remedy in federal court if the appeals coordinator rejects an inmate

6   grievance for failure to meet procedural requirements.  (Pl.'s Memo. at 28.)  However, Ngo was

7   reversed by the U.S. Supreme Court in Woodford v. Ngo, 126 S.Ct. 2378 (2006).

8        In Woodford, the Supreme Court held that "[p]roper exhaustion demands compliance

9   with an agency's deadlines and other critical procedural rules because no adjudicative system can

10  function effectively without imposing some orderly structure on the course of its proceedings."

11  Woodford, 126 S.Ct. at 2386.  The Court held further that "[proper exhaustion] means ... a

12  prisoner must complete the administrative review process in accordance with the applicable

13  procedural rules ... as a precondition to bringing suit in federal court."  Id.

14       In this case, the second inmate appeal submitted by Plaintiff on April 1, 1998, and

15  addressed to Warden Carey, is insufficient to exhaust Plaintiff's administrative remedies,  This

16  appeal was rejected for procedural deficiencies which Plaintiff failed to cure. (Padilla Decl., Exh.

17  B; Padilla Decl., ¶ 25.)  Plaintiff's second administrative grievance falls squarely within

18  Woodford and the Court finds the allegation surviving exhaustion is that concerning the failure to

19  allow witnesses at the disciplinary hearing. All remaining claims against all Defendants are,

20  therefore, unexhausted and are dismissed.[2]

21       **B.   Rule 12(b)(6) - 1st Amendment**

22       Even had Plaintiff adequately exhausted his administrative remedies with respect to the

23  First Amendment allegations against Defendants Padilla and Defendant Warden Carey, the First

24  Amendment claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

25  Procedure.

26

27       [2]Plaintiff's allegations against Defendant Marshall and Davis appear to concern the failure to take steps to
    prevent Plaintiff's wrongful transfer to the SHU.  (Fifth Am. Compl. at ¶¶ 20, 24).  However, the wrongful transfer to
28  the SHU has been found unexhausted and thus, the Court will order that these Defendants also be dismissed from the
    action.

1    Plaintiff's allegations with regard to Defendants Padilla and Carey stem from the

2    handling of Plaintiff's inmate grievances.  However, Plaintiff does not have a constitutional right

3    to an inmate appeals process.   Prisoners do not have a "separate constitutional entitlement to a

4    specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003),

5    citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988).  The non-existence of, or the failure of

6    prison officials to properly implement, an administrative appeals process within the prison

7    system does not raise constitutional concerns. Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988);

8    see also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); Flick v. Alba, 932 F.2d 728 (8th

9    Cir.1991); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982) ("[A prison] grievance

10   procedure is a procedural right only, it does not confer any substantive right upon the inmates.

11   Hence, it does not give rise to a protected liberty interest requiring the procedural protections

12   envisioned by the fourteenth amendment").  A failure to process a grievance also does not state a

13   constitutional violation. Buckley, supra.  Accordingly, the Court finds Plaintiff has failed to state

14   a First Amendment claim against Defendants Padilla and Carey.  Fed.R.Civ.P. 12(b)(6).

15   **IV**.  **MOTION FOR SUMMARY JUDGMENT.**

16       Summary judgment is appropriate when it is demonstrated that there exists no genuine

17   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

18   Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

19           always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
20           pleadings, depositions, answers to interrogatories, and admissions
             on file, together with the affidavits, if any," which it believes
21           demonstrate the absence of a genuine issue of material fact.

22   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

23   burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be

24   made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

25   on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

26   upon motion, against a party who fails to make a showing sufficient to establish the existence of

27   an element essential to that party's case, and on which that party will bear the burden of proof at

28   trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the

1   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

2   circumstance, summary judgment should be granted, "so long as whatever is before the district

3   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

4   satisfied."  Id. at 323.

5          If the moving party meets its initial responsibility, the burden then shifts to the opposing

6   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

7   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

8          In attempting to establish the existence of this factual dispute, the opposing party may not

9   rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

10  form of affidavits, and/or admissible discovery material, in support of its contention that the

11  dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

12  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

13  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

14  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

15  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

16  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

17         In the endeavor to establish the existence of a factual dispute, the opposing party need not

18  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

19  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

21  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

22  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

23  amendments).

24         In resolving the Motion for Summary Judgment, the Court examines the pleadings,

25  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

26  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

27  255, and all reasonable inferences that may be drawn from the facts placed before the court must

28  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

10

1   _Diebold, Inc._, 369 U.S. 654, 655 (1962)(_per curiam_).  Nevertheless, inferences are not drawn out

2   of the air, and it is the opposing party's obligation to produce a factual predicate from which the

3   inference may be drawn.  _Richards v. Nielsen Freight Lines_, 602 F. Supp. 1224, 1244-45 (E.D.

4   Cal. 1985), _aff'd_, 810 F.2d 898, 902 (9th Cir. 1987).

5        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

6   show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

7   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

8   issue for trial.'"  _Matsushita_, 475 U.S. at 587 (_citation omitted_).

9        ***A.  Undisputed Facts***

10  1.   At all times relevant to this action, Plaintiff was an inmate in the lawful custody of the

11       California Department of Corrections and Rehabilitation (CDCR), serving a term of 75

12       years, 8 months.  (Chan Decl., Exh. A, pp 6-10, 17).  Plaintiff was a Level IV inmate with

13       a classification score of 263, requiring housing in a maximum security facility.  (Marshall

14       Decl., ¶ 29.)

15  2.   At all times relevant to this action, Defendants were employees of the CDCR and

16       employed at the California Correctional Institution ("CCI") in Tehachapi, California.

17  3.   On December 16, 1997, Plaintiff was placed in Administrative Segregation ("AdSeg")

18       pending adjudication of the charge of battery on a non-inmate.  (Chan Decl., Exh. A, pp.

19       12-15; Marshall Decl., ¶ 9;

20  4.   Plaintiff was issued a CDC 115, Rules Violation Report, charging him with battery on a

21       non-prisoner based on the December 16, 1997, incident in the clinic.  (Chan Decl, Exh.

22       A, p. 41; Papac Decl., ¶ 7.)

23  5.   On December 23, 1997, Plaintiff appeared before an Institutional Classification

24       Committee ("ICC") for initial review of his AdSeg Placement.  Based on the seriousness

25       of the offense, Plaintiff was retained in AdSeg pending resolution of the disciplinary

26       charges.  (Chan Decl., Exh. A, pp. 12-15, 34).

27  6.   On January 19, 1998, Plaintiff appeared before the Senior Hearing Officer ("SHO"),

28       Defendant R. Papac, for a hearing on the pending disciplinary charge.  Plaintiff indicated

11

he was willing to proceed but that he needed the reporting employee, Dr. Liebman and

MTAs Rogers and Bell present.  The hearing was postponed until the next day.  Dr.

Liebman and MTA Rogers appeared at the hearing on January 20, 1998.  (Papac Decl.,

Exh. A, pp.1, 3.)

7.    Page two of the three page report documenting the disciplinary hearing is missing. (Papac

Decl., ¶ 6.)

8.    Plaintiff was found guilty of the charge of battery on a non-prisoner based on the

preponderance of the evidence.[3]  (Papac Decl, Exh. A.)

9.    The disciplinary hearing report does not document the reasons Plaintiff was not allowed

to call the other four witnesses requested at the disciplinary hearing, Sergeant Zanchi,

MTAs Bell and Mauldin, and Inmate Adams. (Papac Decl., Exh. A, p.4.)

10.   When an inmate is placed in AdSeg, he is given an initial review of his AdSeg placement.

The inmate's case is then reviewed every 30 days by the Institutional Classification

Committee ("ICC") for the duration of his confinement in AdSeg.  If there is reason to

retain the inmate in AdSeg for an extended period fo time, the ICC will refer the case to

the Classification Services Representative ("CSR") for approval.

11.   The ICC is the highest type of classification committee in the CDCR.  The ICC is charged

by the Warden or the Warden's designee.  The ICC is responsible for, among other

things, reviewing all cases in AdSeg.  When an inmate is confined in AdSeg, the ICC

must review the case and make determinations as to the inmate's housing and

classification.  Decisions made by the ICC affecting an inmates housing and classification

are referred to the CSR for endorsement.  The CSR is the individual who reviews the

inmate cases and the ICC decisions for compliance with Departmental policies and

procedures.

12.   On January 22, 1998, Plaintiff's 30 day AdSeg review was conducted.  The form

---

[3]Plaintiff argues that this fact is disputed because there was insufficient evidence to support the finding.
However, the sufficiency of the evidence is not an issue before this Court.  Moreover, the Rules Violation Report is
clear that the finding of guilt was based on a "preponderance of the evidence" heard and considered.  (Exh. A,
Papac. Decl.)

1    indicates that Plaintiff refused to appear and his case was reviewed in absentia.  The ICC

2    elected to retain Plaintiff in AdSeg pending completion of the disciplinary charge with

3    possible D.A. process.  The case was referred to the CSR for a 60 day AdSeg extension.

4    The next review was scheduled for no later than February 19, 1998.  (Attach. A, p. 7,

5    Marshall Decl.)

6    13.   On February 15, 1998, Plaintiff submitted an inmate appeal challenging the disciplinary

7          conviction for battery on a non-prisoner.  The appeals office screened the appeal which

8          bypassed the first level because it was a disciplinary issue.  On March 5, 1998, the appeal

9          was sent out to the Facility 4A Associate Warden to be assigned to a staff member for a

10         second level response.

11   14.   On February 19, 1998, Plaintiff appeared before the ICC for a 30 day AdSeg review.  The

12         ICC reviewed Plaintiff's case factors and noted that the CDC 115 for battery on a non-

13         prisoner had been adjudicated and Plaintiff had been found guilty.  The ICC also noted

14         that the CDC 115 was still pending the audit process.  Defendant Marshall was present

15         during the ICC hearing.  (Decl. Marshall, ¶ 13.)

16   15.   On February 24, 1998, Defendant Marshall completed a SHU Term Assessment

17         Worksheet for Plaintiff.  According to the SHU assessment worksheet, a 12 month SHU

18         term was appropriate.  Completing the worksheet was part of Defendant Marshall's job as

19         Plaintiff's Correctional Counselor.  (Marshall Decl., ¶ 14.)

20   16.   On February 26, 1998, Plaintiff's case was again reviewed in absentia by the ICC because

21         Plaintiff refused to appear.  The ICC reviewed Plaintiff's case factors and assessed a 12

22         month non-aggravated/mitigated SHU term with a Minimum Eligible Release Date

23         ("MERD") of September 16, 1998.  The ICC referred the case to CSR for approval of the

24         SHU term.  The ICC also recommended transfer to Pelican Bay State Prison ("PBSP"),

25         SHU or, in the alternative, to the Corcoran SHU.  Defendant Marshall was present during

26         the ICC hearing.  On March 24, 1998, the CSR endorsed and approved the 12 month

27         SHU term.  (Marshall Decl., ¶¶ 15, 16.)

28   17.   The appeal was assigned to Lt. Canady who interviewed Plaintiff on March 14, 1998.

13

The second level reviewer partially granted Plaintiff's appeal and ordered that the disciplinary finding be reissued and reheard.  The second level response concluded that Lt. Papac did not explain his reasons why additional requested witnesses were not present at the hearing or if not allowed, the reason for the denial.  The second level appeal response is dated March 24, 1998.  Associate Warden Vaughn signed and dated the appeal response on March 31, 1998, and Chief Deputy Warden Sullivan signed and dated the response on April 1, 1998.  (Exh. A, pg. 5, Padilla Decl.)

18.   If the appeals office received the second level response after Plaintiff had been transferred to Corcoran, the CCI appeals office would still remain responsible for issuing a modification ("MOD") order.  The disciplinary proceeding would then be reissued and reheard telephonically, Plaintiff could be returned to the CCI for the rehearing, or the staff at Corcoran could have reheard the matter.

19.   Plaintiff was transferred to the Corcoran SHU on April 8, 1998. (Decl. of Marshall, ¶¶ 17, 18.)

### B.  Analysis

As indicated above, the sole claim surviving exhaustion is the Due Process allegation that Plaintiff was denied the right to call witnesses at his disciplinary hearing.

The Due Process Clause protects against the deprivation of life, liberty or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974).  In order to invoke the protections of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983).  The Due Process Clause itself, however, does not confer on inmates a liberty interest in avoiding "[m]ore adverse conditions of confinement."  Wilkenson v. Austin, 545 U.S. —, 125 S.Ct. 2384, 2393 (2005).  Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

1   Rather than relying on a single standard for determining whether a prison hardship his

2   atypical and significant, the Ninth Circuit holds that a court must rely on a "condition or

3   combination of conditions or factors [that] require[] case by case, fact by fact consideration."

4   Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996.)   Relevant factors to making such a

5   determination are: (1) whether the challenged condition "mirrored those conditions imposed

6   upon inmates in administrative segregation and protective custody;" (2) the duration of the

7   condition and degree of restraint imposed, and (3) whether the transfer will affect the duration of

8   the inmate's sentence.  Sandin v. Conner, 515 U.S. at 486-487; Keenan, 83 F.3d at 1089.

9   In this case, Defendants argue that Plaintiff does not have a liberty interest in remaining

10  free from the SHU as SHU confinement does not subject inmates to an atypical and significant

11  hardship in comparison to other forms prison life.  In support of the Motion for Summary

12  Judgment, Defendants cite to the declaration of D. Ortiz, Associate Warden of the Facility IV-A

13  SHU at Corcoran from August 2002 to February 2005. (Ortiz Decl., ¶1.) Mr. Ortiz states that the

14  conditions in the SHU are generally more restrictive than those in the general population,

15  however, SHU inmates are provided with the same basic necessities as those inmates in the

16  general population. (Ortiz Decl., ¶ 9-11.)  These include, three meals per day, weekly clothing

17  and linen exchange, access to the law library, showers, access to religious advisors, visits, and ten

18  hours of yard time per week. Id.  Unless an inmate is on walk-alone status, inmates are released

19  to the yard in groups of about 12 to 18 inmates at a time.  Id.  Medical staff perform daily rounds

20  to check on the medical needs of the inmates in the SHU.  If an inmate has a specific medical

21  request, he can submit a CDC 7362 form, Inmate Request for Medical Care to the Medical Staff

22  or a Correctional Officer.  Id.  Inmates are allowed to have a television or radio in the cell in

23  addition to other property outlined in the Operational procedures.  Id.  The accommodations in

24  the SHU are generally the same as those in the general population.  Id.  Inmate cells in the SHU

25  are made of concrete cubicles and have a left and right bunk, whereas the general population has

26  an upper and lower bunk.  SHU cells are larger and have 3 windows in each cell whereas the

27  general population cells have 2 windows per call.  Each SHU unit has two vents, one for intake

28  and one for outward ventilation and the temperature is monitored every hour, every day.  Id. at ¶

13.

Finally, Defendants provide evidence that Plaintiff's SHU confinement was for a definite term and did not affect the duration of his conviction.[4]  (Marshall Decl., ¶ 12; Attach. A, pg. 5).

In Opposition, Plaintiff argues that the duration of 5 months in the SHU was atypical and that the conditions experienced by Plaintiff in the SHU were tantamount to "extreme isolation." (Plaintiff's Memorandum at 10-11.)  However, the Court is unpersuaded by these arguments.

Recently, the U.S. Supreme Court held that the inmates had a protected liberty interest in avoiding placement in the Ohio state's supermax facility, although the state's informal nonadversary procedures for such placement were adequate procedural protections to safeguard that liberty interest.  Wilkenson v. Austin, 125 S.Ct. 23384 (2005).  The supermax facility prohibited almost all human contact, with the exception of conversation from cell to cell, kept the lights on at all times, and allowed an hour of exercise per day.  Id.

The Court notes that two key components of the Court's finding in Wilkenson are absent from the facts of this case.  First, Wilkenson's placement in the supermax facility was for an indefinite period of time.  Here, the duration of Plaintiff's confinement was definite.  In addition, Wilkenson lost his parole eligibility upon confinement in the supermax prison, however, there is no evidence before the Court that the Plaintiff suffered an adverse effect on the duration of his confinement.  The Supreme Court in Wilkenson suggested that the placement in the supermax prison would not have implicated a protected liberty interest without the indefinite terms and the loss of parole eligibility because other than these two features plus the extreme limitations on all human contact, "these conditions likely would apply to most solitary confinement facilities."  Id. at 2394.

The Court notes that Plaintiff disputes this conclusion arguing that the such a determination is not dependent on the additional two factors because the Court in Wilkenson did not reach the "baseline question."  (Pl.'s Mem. at 16.)

---

[4]The Court notes that as a result of Plaintiff's prison disciplinary finding, he was assessed a loss of good time credits.  However, Plaintiff's actual confinement in the SHU, the conditions of which are considered here, did not affect the duration of his confinement as in Wilkenson, where the mere confinement to the supermax facility resulted in the loss of parole eligibility.  Wilkenson, 125 S.Ct. at 2394-95.

The Wilkenson Court was not the first to recognize that a combination of factors were to be considered when determining whether there exists an atypical and significant hardship. These "guideposts" were set forth by the U.S. Supreme Court in Sandin v. Conner, 515 U.S. 472, 486-487 (1995) and recognized and applied by the Ninth Circuit in Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (noting that in addition to the difference between general and segregated populations, relevant factors include the likely affect on the duration of inmate's sentence and duration of confinement). Although the Court in Wilkenson concluded that it did not need to identify the "baseline" from which to measure what is atypical and significant because it found the conditions at OSP were atypical and significant under any baseline, it nevertheless examined the three factors identified in Sandin and Keenan in rendering its conclusion. Wilkenson, 125 S.Ct. at 1089. Further, it is well established that administrative segregation in and of itself does not implicate a protected liberty interest. Sandin, 515 U.S. at 486 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody."); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000) (holding that the pre-sentencing prisoner had no liberty interest in being free from administrative segregation). Thus, examination of all three factors is appropriate in light of the above authority.

Plaintiff alleges that he experienced "extreme isolation and deprivation" during his confinement in the SHU and that the differences between the general population and the SHU are substantial. (Pl.'s Memo. at 11.) The evidence before the Court, however, presents a different picture. The Supreme Court noted in Wilkenson, that "almost all human contact is prohibited, even to the point where conversation is not permitted between cells; the light, though dimmed, is on for 24 hours, exercise is for 1 hour per day, but only in a small room," Wilkenson, 125 S.Ct. at 2394. In contrast, the SHU cells at Corcoran accommodate two inmates, inmates are allowed non-contact visits, and get at least 10 hours of yard time with anywhere from 12 to 18 other inmates[5]. In addition, phone privileges, although restricted, are allowed; showers are allowed three times per week; inmates are allowed to have personal and legal property within certain

---

[5]See Attach. A, p. 64, Ortiz Decl. indicating that inmates get anywhere from 10 to 12 hours of yard time depending on which yard group an inmate is assigned.

1  guidelines.  Plaintiff's general complaint concerning the SHU is that his privileges were not

2  identical to those given to inmates in the general population.[6]  However, viewing the conditions

3  of confinement in the SHU together with the effect on the duration of the sentence and duration

4  of the SHU term itself, the Court finds, as a matter of law, that confinement in the SHU at

5  Corcoran did not present a dramatic departure from the basic conditions of prison life such that

6  Plaintiff retained a liberty interest in remaining free from such confinement.

7     Defendants argue that even were the Court to find a liberty interest in remaining free from

8  the SHU, Plaintiff received all the process he was due under the law.  Defendants contend that

9  Plaintiff's placement in the SHU was for administrative reasons and thus, Plaintiff is only

10  entitled the procedural protections set forth in Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct.

11  864, 869 (1983), namely adequate notice and an opportunity to be heard at the ICC hearing, and

12  periodic review.  (Def.'s Memo. at 11-12.)  Plaintiff argues that his placement in the SHU was

13  for punitive reasons.  (Pl.'s Memo. at 19.)

14     In Wolff v. McDonnell, 418 U.S. 539, 556, the Supreme Court considered the process

15  required before a prison official can punish an inmate for serious misconduct by assessing a loss

16  of "good time" credits.  The Ninth Circuit has also held that the assignment of validated gang

17  members to the SHU is an *administrative* measure, and is "essentially a matter of administrative

18  discretion."  Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003)(*quoting* Munoz v. Rowland, 104 F.3d

19  1096, 1098 (9th Cir. 1997)(*emphasis added*)).  The Ninth Circuit, however, has not addressed

20  whether the assignment of an inmate to the SHU in relation to a prior disciplinary finding entitles

21  him to the greater protections of Wolff or whether he is solely entitled to the lesser set forth in

22  Hewitt.  This Court need not resolve this issue here, however, as it has determined that Plaintiff

23  does not have a liberty interest in remaining free from the SHU.  As no liberty interest is

24  implicated, Plaintiff cannot invoke the protections of the Due Process Clause and Defendant is

25

26     [6]Plaintiff also complains that he was separated from his family being confined at a facility further from
where they are located.  However, inmates have no constitutional right to be housed at any particular facility.  See

27  Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532 (1976). Similarly, Plaintiff does not have a right to contact
visits. See Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (*per curiam*); Casey v. Lewis, 4 F.3d 1516, 1523

28  (9th Cir. 1993); Toussaint v. McCarthy, 801 F.2d 1080, 1113-114 (9th Cir. 1986).

1    entitled to summary judgment on the issue.

2    **V.  ORDER**

3          Accordingly, the Court HEREBY ORDERS:

4          1.      Defendant's Motion to Dismiss is DENIED in part with regard to the allegation

5                  against Defendant Papac that Plaintiff was denied witnesses at his prison

6                  disciplinary hearing;

7          2.      The Motion to Dismiss is GRANTED and the case is DISMISSED with respect to

8                  all remaining claims against all remaining Defendants for Plaintiff's failure to

9                  exhaust his administrative remedies;

10         3.      Defendant's Motion for Summary Judgment is GRANTED with respect to the

11                 remaining claim against Defendant Papac concerning the denial of witnesses at

12                 Plaintiff's disciplinary hearing; and

13         4.      This Clerk of Court is DIRECTED to enter judgment in accordance with this

14                 Order.

15         This concludes this action in its entirety.

16   IT IS SO ORDERED.

17   **Dated:    September 27, 2006              /s/ Anthony W. Ishii**
     9h0d30                                   UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28